IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

  vs.                                  CIVIL NO. 97-587 JC/LFG
                                         CRIM. NO. 87-15 JC

GARY RAY CROWELL,

        Defendant-Movant.


**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION**[1]

**FINDINGS**

1.  This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed April 25, 1997.  Movant Gary Ray Crowell ("Crowell") attacks the judgment and sentence entered by the United States District Court for the District of New Mexico in United States v. Crowell, No. CR 87-15 JC.

2.  In 1987, Crowell pled guilty to kidnaping in violation of 18 U.S.C. 1201(a)(1) and was sentenced to life imprisonment. He did not pursue a direct appeal.

3.  Crowell's motion under §2255 was originally dismissed on January 26, 1998, when the District Judge adopted the findings and recommended disposition of the Magistrate Judge.  This

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

decision was reversed by the Tenth Circuit on April 21, 1999 and remanded to this Court. An evidentiary hearing was held on October 4, 1999. Judicial notice is taken of the court files and records in this matter, in CR 87-15, and in CIV 97-420 JC/LCS (Crowell's first application for § 2255 relief).

4. As grounds for review, Crowell asserts that his guilty plea was not knowing and voluntary, that counsel was ineffective, and that he was denied his right of appeal.

5. The United States ("Respondent") requests that Crowell's claims be dismissed for unreasonable delay pursuant to Rule 9(a), Rules Governing Section 2255 Proceedings for the United States District Courts. In the alternative, Respondent urges that Crowell's motion be denied on the merits.

## Facts and Procedural History

6. The facts and procedural history of this case are taken from court records including the presentence report and case file in CR 87-15, the case file in CIV 97-420, the briefing and attachments of the parties, and the evidentiary hearing (hereafter cited as "EH") held on October 4, 1999

7. On December 16, 1986, Crowell abducted a 14-year old girl at knife point from a street in Mesa, Arizona, as she was leaving her dentist's office. The victim's aunt and uncle, who were driving to pick her up, observed the abduction but were unable to prevent it. Crowell drove with the victim into New Mexico, at various times tying her up, forcing her to perform oral sex on him, raping her vaginally and anally, and threatening to kill her if she tried to get away. He camped that night in an area near Datil, New Mexico. The victim managed to escape the next day by running away from the campsite. She was pursued by Crowell but managed to elude him. She ran to a house where the

New Mexico State Police were contacted.  Crowell was arrested on December 18, 1986, in Socorro, New Mexico.

8. Crowell was represented by attorney Phillip C. Gaddy ("Gaddy"), who was appointed from the CJA panel.  Crowell initially pled not guilty.  Trial was scheduled and a jury had been selected when, shortly before trial, Crowell changed his mind and decided to plead guilty.  The United States had not offered a plea bargain.  Rather, the plea was a "straight up" plea to the indictment.  Gaddy testified at the evidentiary hearing that it was highly unusual in his practice for any client to plead straight up to an indictment.  Gaddy prepared and Crowell signed an affidavit in which Crowell asserted it was his desire to plead guilty to the charge of kidnaping in spite of his attorney's readiness to proceed to trial.[2]  Crowell swore that his decision to plead guilty was being freely and voluntarily made, without pressure from his attorney or anyone else.  His stated reason for pleading was to ensure that he would do federal time, as it was his understanding that the state of Arizona might not pursue charges against him if he received a significant sentence in federal court.  He acknowledged in the affidavit that there was no formal agreement to this effect, and the chance that Arizona would not prosecute was only a "possibility."  [Doc. 1, Attachment, at A-3 to A-5].

9. Crowell also signed a plea agreement, denoted a "Memorandum of Understanding Regarding Guilty Plea," in which he stated his desire to plead guilty to the kidnaping charge.  A plea hearing was held on April 10, 1987, at which District Judge John Edwards Conway accepted Crowell's plea and found him guilty as charged.  The record of this hearing no longer exists.

---

[2] The copy before the Court is unsigned; however, it is undisputed that Crowell signed the affidavit at the time he decided to plead guilty.  (EH, at 46, 64).

10. Crowell now asserts that he is innocent of the charge to which he initially pled. He says that he picked up the 14-year-old girl while she was hitchhiking, that she consented to go with him, and that he did not force her into the car but rather helped her since she was limping from an ankle injury. The record is unclear as to whether Crowell's guilty plea was based North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160 (1970). Crowell claims he did enter an Alford plea, but this assertion is contradicted by the prosecuting attorney. Records of the plea and sentencing hearing no longer exist.

11. Crowell testified at the evidentiary hearing that he pled guilty in federal court because he was aware that the state of Arizona was also preparing to prosecute him on charges arising from the abduction, and he said he preferred to do time in a federal rather than a state prison and wanted to ensure that he would be convicted in federal court. Crowell said his attorney told him that it was likely the Arizona prosecutor would drop the state charges if he received a substantial federal sentence. Even if he were to be convicted in state court, he said, he had nothing to lose because his attorney told him his federal sentence would run concurrently with any state sentence he received.

12. After entering the guilty plea and shortly before sentencing, Crowell changed his mind again. He asked his attorney to submit a motion to withdraw the plea on grounds it was not voluntarily entered. Crowell said this change of heart was prompted by the fact that his attorney had not shown him certain exculpatory documents until after he pled guilty, those documents being a statement to the F.B.I. by the victim's aunt and uncle, the record of the victim's hospitalization, and a laboratory report. He alleged that these documents corroborated his story of helping rather than forcing the victim into his car, contradicted the victim's statement that she was tied up and cut with

4

a knife, and showed that she had recently had sexual contact with someone other than Crowell.[3]

13.  On the day of sentencing before Judge Conway, Gaddy made an oral motion to withdraw Crowell's plea, citing the allegedly exculpatory documents.  Judge Conway denied this motion.  Gaddy stated that after the initial motion to withdraw was denied, he made a second oral motion for withdrawal of the plea based on ineffective assistance of counsel (although Crowell said he does not remember any such attempt to withdraw and substitute new counsel).

14.  Gaddy has no memory of whether or not he gave these documents to Crowell prior to the time he pled guilty.  In his routine practice, however, he would provide copies of all documents to clients.  He said he made the motion to withdraw on the basis of ineffective assistance, because he felt at the time that "if I had not given him everything he needed to make an informed, knowledgeable decision" regarding the plea, then he hadn't done his job properly.   Gaddy at no time concurred that he had not provided the documents, but rather explained that if, indeed, he had failed to provide all that was necessary, that he would have been deficient in his obligation to a client.  Gaddy thought new counsel should be appointed so the court could determine whether he had given Crowell everything he needed prior to the plea.  (EH, at 11, 13, 28-29).  Gaddy's internal office file might have contained documents and correspondence shedding light on whether or not Gaddy gave these documents to Crowell at an earlier stage in the proceedings, but long ago, the file was destroyed.

15.  Judge Conway denied the motions to withdraw the plea and to appoint new counsel, and he sentenced Crowell to life imprisonment.  No record of the sentencing hearing now exists.  Crowell contends that Judge Conway did not advise him of his appellate rights at the sentencing hearing.

---

[3] Crowell did not present these documents at the evidentiary hearing, or any other time, and they are not currently before the Court.  As with many other issues in this case, the Court is left to make findings of fact based on the relative credibility of witnesses at the evidentiary hearing.

Neither Gaddy, nor Acting United States Attorney Robert Gorence ("Gorence"), formerly an Assistant United States Attorney who handled Crowell's prosecution in 1987, has any specific recollection as to what Judge Conway said, if anything, regarding appeal. Gorence, who has handled multiple criminal matters before Judge Conway, testified that the judge always advised a defendant of his right to appeal, and always used a standard sentencing checklist which contained an advisement of appeal rights. However, given the years which have passed, Gorence had no independent recollection of what the judge said at sentencing.

16. Neither Gaddy nor Crowell can remember any attorney-client discussion regarding appeal. Gaddy sent a letter to Crowell shortly after the sentencing in which he advised him of his right to appeal the sentence and recommended that he do so. He did not offer to prepare and file a notice of appeal on Crowell's behalf.

17. Crowell's testimony is conflicting as to exactly when he received this letter from Gaddy. He was sentenced on May 27, 1987. The letter from Gaddy was dated June 1, 1987. In his first Motion to Vacate under § 2255 (Civ. No. 97-420), Crowell alleged that he was in transit until June 10, 1987 and did not receive his property until a week later, which would mean that he got the Gaddy letter on approximately June 17, 1987.[4] In his second Motion to Vacate, Crowell stated, "I was delivered to the federal institution on June 10, 1987 but was not given my property until some days later." [Doc. 1, attached "Memorandum of Grounds for Appeal," at 5]. At the evidentiary hearing, Crowell testified that he did not receive the letter until approximately the end of July, 1987. (EH, at 57-58).

--------------------------------------------------

[4] Crowell attached documents to his first Motion to Vacate establishing that he left the Valencia County Detention Center on June 4, 1987 and was committed to federal prison on June 10, 1987 (Motion to Vacate, Civ. No. 97-420, Appendix A and B).

18.  Whenever it was received, Crowell testified that he did not know until he got the letter that he had a right to appeal.  He said that upon receiving the letter, he enlisted the help of another inmate and filed a request for a belated appeal.  Crowell did not say, in his testimony or in any of his briefing, exactly when he submitted this request; he stated only that it was "some days" later, or "upon receipt" of the letter from Gaddy.  The implication that he immediately filed a belated appeal, after he got the letter, is simply not confirmed by the record.

19.  The record shows that Crowell's first post-sentence attempt to contact the court occurred on September 17, 1987, when he submitted a motion for appointment of counsel.  The clerk of court wrote back to him on September 21, noting that he had counsel at the sentencing and asking him to advise the court why he wanted counsel now.  Crowell did not reply to this letter, but on October 8, 1987, he submitted a motion for re-appointment of counsel.  The clerk wrote back on October 19, telling Crowell the court could not act on his motion because he did not have any matters then pending before the court; the clerk enclosed forms for Crowell to file a § 2255 motion.  Crowell took no action and did not file such a motion.  Instead, on November 2, 1987, he wrote a letter to Judge Conway, asking for transcripts of his hearings.  The clerk wrote back on November 17, again enclosing motion forms and instructions for Crowell to file a § 2255 motion, telling him he could make a formal request for transcripts once the § 2255 action was initiated.  Crowell again failed to act.

20.  Indeed, Crowell took no action in this case for 9½ years.  On March 28, 1997, he filed his first § 2255 motion, in cause No. CIV 97-240 JC/LCS.  The court denied his request and, as the Tenth Circuit found, "advised Mr. Crowell to file (another) § 2255 motion rather than appeal." United States v. Crowell, 182 F.3d 933 (Table, text in Westlaw), No. 98-2064, 1999 WL 285855,

at *2 (10th Cir. Apr. 21, 1999) (hereafter cited as "Crowell").  Crowell then filed the present motion under § 2255.[5]

21.  In the present motion, the Magistrate Judge recommended, and the District Judge concurred, that the case be dismissed because it was filed after the statute of limitations had run under AEDPA; it was not timely under Rule 9(a) of the Rules Governing Section 2255 Proceedings; and also, on the merits.  The Tenth Circuit reversed the rulings on limitations and Rule 9(a), eliminated several of Crowell's grounds for relief as plainly without merit, and ordered a remand for examination of the issues of ineffective assistance of counsel, voluntariness of the plea, and denial of the right to a direct appeal.  Crowell, *supra*, at * 3.

22.  An evidentiary hearing was held following remand, and the parties submitted post-hearing briefs.

### Rule 9(a) Defense

23.  As noted above, the District Court initially dismissed Crowell's § 2255 motion on grounds, *inter alia*, that he had delayed too long in bringing his action, thereby prejudicing the government in its ability to respond.  *See*, Rule 9(a) of the Rules Governing Section 2255 Proceedings.  The Tenth Circuit reversed the District Court on this ground, noting:

> Although § 2255 now contains a one-year limitation period, we see no reason to depart from our past Rule 9(a) case law holding that the mere passage of time cannot bar relief under the rule . . .  Instead, the government has the burden of making a particularized showing of prejudice in its ability to respond . . .  Rule 9(a) dismissal requires notice and an opportunity to respond; it is akin to summary judgment.

---

[5] The Tenth Circuit held that this action did not constitute a "second or successive petition," due to the advice given by the district court.

Crowell, *supra*, at \*2-3.  The Tenth Circuit also noted that a Rule 9(a) defense is a form of laches, an affirmative defense that is waived if not pled, citing <u>Smith v. Secretary of New Mexico Department of Corrections</u>, 50 F.3d 801, 820 n.30 (10th Cir. 1995).  Since the government did not raise a Rule 9(a) defense in its Response, the Tenth Circuit held, Crowell was not given sufficient notice and opportunity to respond.

24.  Following remand and prior to the evidentiary hearing in this case, Respondent filed a Notice of Defense Under Rule 9(a) of Rules Governing § 2255 Motions [Doc. 30], formally notifying the Court and Crowell of its intention to present testimony and evidence at the hearing to establish that Crowell's delay in filing his motion prejudiced the government in its ability to respond.  Respondent stated in its motion that a longstanding court policy, under which the clerk's office routinely destroys old documents, eliminated the evidence which could most effectively refute Crowell's claims.  Crowell's substantial delay resulted in the loss of available documents that would refute Crowell's claims.  Thus, the government argued prejudice.

25.  At the evidentiary hearing, the Government addressed the prejudice issue through the testimony of Pamela Gutierrez, court reporter coordinator and appeals liaison for the court (EH, at 102-106).  Ms. Gutierrez testified that court reporters' notes are not filed but rather are logged and held in the court's vault.  Once a case is closed, the case file is sent to the federal archives in Denver, but court reporters' notes are kept in the court vault in Albuquerque for at least ten years, as required by law.  After that time, the notes are destroyed.  Ms. Gutierrez testified that no transcript was ordered in Crowell's case, and the court reporter's notes from that case are no longer in the vault.  In accord with the court's record retention and destruction policy, the records were presumably destroyed after the passage of time.

26. Prosecuting attorney Gorence also testified at the evidentiary hearing, citing instances of prejudice arising from the lack of transcripts and fading memories. Before excusing Gorence as a witness, the Court reminded the parties that the United States filed a Rule 9(a) motion and that the government demonstrated prejudice due to lack of court records. He confirmed that Crowell and his counsel had received a copy of the notice, and the judge said he wanted to ensure that Crowell availed himself of the opportunity to elicit additional testimony from Gorence on the issue of the government's inability to respond due to lack of court records. Crowell's counsel noted his objection to the notice on grounds it was untimely, and stated his position that the issue had already been decided by the Tenth Circuit. The Court stated that the Rule 9(a) notice was before the Court, and "I wanted to be sure that Mr. Crowell would have any opportunity to respond to the testimony that has been presented through this witness or any other witness concerning the claim of prejudice." (EH, at 100). Crowell had no further examination of this or other witnesses on the prejudice issue raised by the government's 9(a) notice.

27. As noted above, the Tenth Circuit likened Rule 9(a) to an affirmative defense that is waived if not pled. Crowell, *supra*, at *3. The primary concern of the circuit court was that Crowell was not given notice and an opportunity to respond. Such response would either be a showing that the Government was not prejudiced by the delay, or else that the delay was due to the fact that the movant was ignorant of the grounds for his motion until after the prejudice occurred. Here, Crowell was given notice and had ample opportunity to respond to the prejudice issue, but presented no evidence on the matter to challenge the government's showing of prejudice.

28.   The principle that Rule 9(a) is an affirmative defense which is waived if not pled was set forth in Smith v. New Mexico Department of Corrections, cited above.  The Smith court cited a 1992 case from the Middle District of Tennessee, which in turn relied on a 1980 case, Hillery v. Sumner, 496 F. Supp. 632, 634-36 (E.D. Cal. 1980).  Hillery was a § 2254 case in which the court did indeed hold that failure to plead laches in the Answer constituted a waiver of the defense; however, the court implied that the Respondent should be permitted to amend its pleadings to make a Rule 9(a) claim. Hillery, at 635 n.2.

29.   The Tenth Circuit takes a similarly liberal approach to permitting reliance on affirmative defenses even when the asserting party has not strictly followed F. R. Civ. P. 8(c),  which requires that affirmative defenses be raised in the responsive pleading.  In Marino v. Otis Engineering Corp., 839 F.2d 1404, 1408 (10th Cir. 1988), the court noted that the purpose of Rule 8(c) is to put "plaintiff on notice well in advance of trial that defendant intends to present a defense in the nature of an avoidance" and, where that purpose has been served, the court may in its discretion allow liberal amendment of pleadings. *See also*, Radio Corp. of America v. Radio Station KYFM, Inc., 424 F.2d 14, 17 (10th Cir. 1970) (regarding amendments to conform to the evidence: "It should be noted that we are not holding that if a party fails to raise an affirmative defense in his original responsive pleadings he is forever barred from raising it").

30.   As noted above, Crowell pled guilty on April 10, 1987 and although he attempted to withdraw his plea, the motion was denied and he was sentenced on May 27, 1987.  His first   § 2255 motion was filed on March 28, 1997 (CIV No. 97-420), almost ten years after the plea and sentence. Crowell did not file a direct appeal of his sentence, and therefore no transcripts of the plea and sentencing hearings were ever prepared.  The court reporter's notes of the plea hearing should have

been preserved until April 10, 1997, and the notes of the sentencing hearing should have been preserved until May 27, 1997. There is nothing on the record to show that the notes were destroyed any earlier than those dates.

31. Crowell did not make a request for transcripts when he filed his first § 2255 motion on March 28, 1997. In its Response to Defendant's Motion to Vacate in this case [Doc. 9], filed July 3, 1997, Respondent pointed out that Crowell had waited almost ten years after sentencing to file his motion, and Respondent notified the Court that transcripts of the plea and sentencing hearings no longer exist. The absence of records made it difficult for the Government to respond to the claims of ineffective assistance of counsel and failure of the trial court to advise Crowell of his right to appeal.

32. The government bears the burden under Rule 9(a) of showing prejudice in its ability to respond to the § 2255 motion; prejudice in the ability to re-try the movant (should he succeed in his motion) is irrelevant. Vasquez v. Hillery, 474 U.S. 254, 106 S. Ct. 617 (1986); Hannon v. Maschner, 845 F.2d 1553, 1556 (10th Cir. 1988). The lack of transcripts due to passage of time is one factor to consider in determining whether the government has been prejudiced in its ability to respond to the motion. Bowen v. Murphy, 698 F.2d 381 (10th Cir. 1983); Strahan v.Blackburn, 750 F.2d 438 (5th Cir. 1985); Clency v. Nagle, 60 F.3d 751 (11th Cir. 1995).

33. In spite of the fact that Respondent did not raise a Rule 9(a) defense in its original response to Crowell's § 2255 motion, this is an appropriate case to apply a Rule 9(a) laches defense. Crowell has given no explanation for the 9½-year delay in filing his motion. As was the case in Strahan v. Blackburn, supra, at 443, he made only "languid" attempts to preserve the transcripts; he asked for transcripts in October 1987 in a letter directed to Judge Conway, and when he was told by

12

the court clerk that he would have to file a § 2255 motion before transcripts could be ordered, he waited 9½ years to do so. He never again asked for transcripts. Twice the clerk mailed forms and instructions to assist Crowell in filing a § 2255 motion; he took no action on this information for almost ten years, and he has provided no explanation for this delay. A reasonable inference is that he long ago resigned himself to his prison term but perhaps changed his mind once again, because the April 1997 AEDPA deadline was looming.

34. Furthermore, Respondent has shown prejudice in its ability to respond, in the following ways. With no available transcripts of the plea hearing, the government has no concrete evidence, other than the testimony of the prosecuting attorney, to rebut Crowell's assertion that he entered an Alford plea rather than admitting his guilt in open court. The plea colloquy from the plea proceedings and the transcript of the sentencing hearing could be used to refute the claims that Crowell's plea was not knowing and voluntary. Gaddy's now-destroyed internal case file and correspondence could well prove the exact date on which he gave Crowell the documents which Crowell now claims were instrumental in his decision to attempt withdrawal of his guilty plea, and which figure in his claim of ineffective assistance of counsel. Crowell claims that at the sentencing hearing, Judge Conway failed to advise him of his right to appeal. Transcripts of the key hearings, which could be used to challenge Crowell's unsupported arguments, are no longer available due to Crowell's delay in filing this case. The sentencing hearing transcript would also shed light on Gaddy's purported attempt to withdraw as counsel and have another attorney appointed for Crowell to look into the matter of ineffective assistance. Judge Conway denied Crowell's motion to withdraw his guilty plea. Thus, Judge Conway had to determine that the plea was voluntary; it would certainly be helpful to have a transcript of that hearing in order to ascertain the grounds for this ruling.

35.  In addition, nearly all of the witnesses at the evidentiary hearing stated, at one time or another in their testimony, that they could not remember certain events:  Gaddy could not remember, specifically, whether he had given the documents to Crowell before the guilty plea; memories of all the witnesses varied as to whether state charges were pending, or merely contemplated, at the time Crowell pled guilty; there is a sharp difference of opinion as to whether Crowell entered an <u>Alford</u> plea or simply a plea of guilty, and the record is unclear on this issue; Gaddy remembers offering to withdraw as counsel at the sentencing hearing, but Crowell has no memory of this; Gaddy does not recall whether he and Crowell discussed the right to appeal, even though it is undisputed that Gaddy sent Crowell a letter advising him of his right to appeal; no one can specifically recall what  Judge Conway told Crowell about his right to appeal; Crowell's testimony contradicts itself as to the date he received Gaddy's letter advising him of his appeal rights – at one point, he says it was the end of July, at another he sets it at around June 17 or even earlier.  Most of these matters could have been determined definitively if the records were still available, and the witnesses' memories would have been sharper if Crowell had not waited almost ten years before filing his motion.  It is beyond dispute that Crowell's extraordinary delay in filing his motion, and the resulting loss of records, thwarts the government's ability to present evidence in opposition to the claims.

36.  "Once the government has shown prejudice, the burden shifts to the petitioner to show either that the state actually is not prejudiced or that petitioner's delay is based on grounds [of] which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred." <u>United States v. Gutierrez</u>, 839 F.2d 648, 652 (10th Cir. 1988) (internal quotation marks omitted).

37. Respondent has shown the requisite prejudice, and Crowell has not given any reason at all for his lengthy delay in filing nor shown that he had not (and could not have) discovered the basis for his § 2255 motion before the prejudice occurred. Crowell was given notice prior to the evidentiary hearing that the government intended to rely on a Rule 9(a) defense, and the Court took care at the hearing to give Crowell an opportunity to rebut Respondent's showing of prejudice. Crowell chose not to attempt a rebuttal, relying instead on the Tenth Circuit's ruling that Respondent was precluded from raising this issue because it had not asserted it as an affirmative defense in its initial pleading.

38. Although Respondent rectified this omission when it filed its Notice of Defense Under Rule 9(a) [Doc. 30], the Court recognizes that the Tenth Circuit has never specifically ruled that such notice will cure a failure to assert the defense at the outset of the litigation. The Court notes also that the Rule 9(a) defense is permissive, not mandatory, and that it is governed by equitable principles. <u>Hannon</u>, *supra*, at 1557. Thus, although it could do so, the Court does not solely rely on Rule 9(a) delay as a basis for dismissing this case, and the merits will be addressed. The Court finds, however, that Crowell's unexplained delay has prejudiced the government and has made it more difficult for Crowell to sustain his burden of proof in this case, as will be seen below.

### Denial of Right to Appeal

39. Crowell asserts that he was denied due process and effective assistance of counsel in connection with his failure to file a direct appeal of his sentence. He claims that Judge Conway failed to advise him at the sentencing hearing that he had a right to appeal, and his attorney failed to file an appeal. He claims further that he was unaware of this right until he received a letter from his attorney, after the time for filing a notice of appeal had expired.

## Trial Judge's Advice on Right to Appeal

40. The movant in a § 2255 proceeding has the burden of proving the elements of his claim. United States v. Gray, 182 F.3d 762, 768 (10th Cir. 1999). The court reporter's notes of the sentencing hearing have been destroyed, and Crowell cannot therefore produce transcripts of the hearing which would conclusively demonstrate whether or not Judge Conway advised him of his right to appeal. The testimony at the evidentiary hearing, approximately 12½ years after sentencing, was conflicting. Crowell testified that he remembers distinctly that "Mr. Conway" did not advise him of his right to appeal at sentencing. (EH, at 77). Gaddy does not remember what the judge said, if anything, about Crowell's right to appeal. (EH, at 31).

41. Gorence also said that he had no specific memory of what Judge Conway told Crowell about his right to appeal at the sentencing hearing; however, he also testified that he has appeared many times in front of Judge Conway and has never known him to fail to give a defendant information on his right to appeal. The judges in this district, he said, read from prepared documents at sentencing hearings which contain checklists, and he would be "flabbergasted" if Judge Conway had failed to advise Crowell of his appellate rights. (EH, at 90). Judge Conway uniformly advises defendants of their appeal rights at sentencings. There is a presumption of regularity in court proceedings. Barefoot v Estelle, 463 U.S. 880, 887 103 S. Ct. 3383, 3392 (1983). The presumption here is that Judge Conway did what he always does, that is, he used a standard sentencing memorandum, and advised Crowell of his right to appeal. Crowell presents no evidence to rebut this presumption other than his own self-interested testimony. It is a reasonable inference from the evidence presented that Judge Conway advised Crowell of his right to appeal, and the Court so finds.

42. Even if Judge Conway had failed to advise Crowell of his right to appeal the sentence, there would be no prejudice if Crowell had "independent knowledge of the right to appeal." Peguero v. United States, 526 U.S. 23, 119 S. Ct. 961, 964-65 (1999). It is undisputed that Gaddy advised Crowell of his right to appeal in Gaddy's June 1, 1987 letter. Moreover, "independent knowledge" of the right to appeal can come from other sources, including Crowell's own prior contact with the criminal justice system. Krevsky v. United States, 186 F.3d 237, 240 (2d Cir. 1999); Alvarez v. United States, 47 F.3d 1173 (Table, text in Westlaw), 1995 WL 63013, at *2 (7th Cir. Feb. 13, 1995). Crowell acknowledged at the evidentiary hearing, after some prodding, that he pled guilty in 1980 to charges of abduction and rape in Virginia, and to marijuana charges in Arizona, and that he went through sentencing procedures in both of those cases. As Respondent pointed out in its brief, it is implausible that Crowell was not notified by at least one of these courts that he had a right to appeal. The Court rejects as not credible Crowell's assertion that he was unaware that he had a right to appeal.

### Counsel's Advice and Assistance in Bringing Appeal

43. Crowell also relies on ineffective assistance of counsel. His position is that he wanted to appeal but was thwarted by his attorney's failure to take steps that a reasonably competent defense attorney would have taken to ascertain whether or not Crowell wanted to file an appeal, and to assist him in bringing the appeal. Crowell's argument fails for lack of proof.

44. A criminal defendant has the right to effective assistance of counsel not only at trial but also through a first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 105 S. Ct. 830 (1985); Hannon, *supra*. The right to effective counsel also attaches during the hiatus between conviction and the date for filing an appeal, to ensure that a defendant knows of his right to appeal, knows how to initiate an

appeal, and has the benefit of counsel's advice as to whether an appeal is indicated. <u>Baker v. Kaiser</u>, 929 F.2d 1495, 1499 (10th Cir. 1991).

45. Defense counsel's duty following conviction is to explain the advantages and disadvantages of appealing, to advise the defendant on the chances of success, and to ascertain whether the defendant wants to appeal the conviction. <u>Romero v. Tansy</u>, 46 F.3d 1024, 1030 (10th Cir. 1995). Where the record establishes that the defendant instructed his attorney to perfect an appeal, and counsel did not do so, ineffective assistance is established. <u>Abels v. Kaiser</u>, 913 F.2d 821, 823 (10th Cir. 1990). However, where there is conflicting testimony about whether the defendant asked counsel to file an appeal, the court need not accept the defendant's version of the facts but may instead choose to believe the attorney. <u>United States v. Blanton</u>, 955 F.2d 49 (Table, text in Westlaw), 1992 WL 26807 (10th Cir. Feb. 14, 1992).

46. Counsel's duty with regard to appeal is somewhat different following a guilty plea. Although defense counsel may, under some circumstances, have a constitutional duty to discuss the merits of appeal with a defendant even after a plea of guilty, <u>Hardiman v. Reynolds</u>, 971 F.2d 500, 501 (10th Cir. 1992), the attorney "has no absolute duty in every case to advise a defendant of his limited right to appeal after a guilty plea." <u>Laycock v. New Mexico</u>, 880 F.2d 1184, 1187-88 (10th Cir. 1989). Counsel's failure to notify the defendant of his right to appeal following a guilty plea is not in itself ineffective assistance, unless the claim of error is made on constitutional grounds which could result in setting aside the plea, or unless the defendant affirmatively inquires about appeal rights. <u>Id.</u>, at 1188.

47. There is nothing on the record to support a finding that Crowell specifically asked Gaddy to file an appeal for him, and Crowell does not allege that he did so. Although it appears from the

record that Gaddy and Crowell did not discuss the possibility of appeal in any face-to-face conversation, Gaddy did write to Crowell approximately five days after sentencing, advising him of his right to appeal and the deadline for doing so, setting out what he considered to be the Crowell's best argument on appeal, and advising him of his chances for success. Crowell took no steps in response to the letter. He did not ask Gaddy to file an appeal; he did not file an appeal on his own.

48. It was Gaddy's opinion that Crowell had grounds for appeal based on the trial court's failure to allow him to withdraw his plea, and perhaps on grounds of ineffective assistance of counsel. While Gaddy could have made a greater effort to find out whether or not Crowell wanted to file an appeal, his failure to do so does not evidence ineffective assistance. Gaddy's failure to ask if Crowell wanted him to appeal does not fall "below an objective standard of reasonableness" under the first prong of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). There is no requirement that Gaddy appeal the guilty plea. Moreover, the Court cannot say that Gaddy's performance prejudiced Crowell's case, under the second prong of <u>Strickland</u>.        49. It is generally held that when counsel fails to file an appeal, prejudice is presumed and the habeas petitioner need not bother proving the second prong of <u>Strickland</u>. <u>Rodriquez v. United States</u>, 395 U.S. 327, 89 S. Ct. 1715 (1969). Although the Tenth Circuit has often voiced this principle, it has also provided an exception: Petitioner is not entitled to relief if he consented to the failure to appeal. <u>Hannon v. Maschner</u>, *supra*, at 1559 (the District Court must make the determination, as a factual issue, "whether it was counsel's error or defendant's knowing and intelligent waiver that was the reason no appeal was filed"); <u>Romero v. Tansy</u>, *supra*, at 1031 (counsel's failure to appeal is not deficient if defendant waived the right).

50.  The Tenth Circuit's approach has recently been upheld by the Supreme Court.  In a §
2254 case alleging denial of the right to appeal following a guilty plea, the Court presented the
question:  "Is counsel deficient for not filing a notice of appeal when the defendant has not clearly
conveyed his wishes one way or the other?"  <u>Roe v. Flores-Ortega</u>, -- S. Ct --, 2000 WL 201148
(Feb. 23, 2000).  The Court stated in <u>Flores-Ortega</u>, at *6, "We cannot say, as a constitutional matter,
that in every case counsel's failure to consult with the defendant about an appeal is necessarily
unreasonable, and therefore deficient."

51.  Under <u>Flores-Ortega</u>, the petitioner is not relieved of his burden of establishing the
prejudice prong of <u>Strickland</u> when claiming that his attorney failed to appeal.  Although he need not
demonstrate that the lost appeal was meritorious, the petitioner still bears the burden of showing that,
but for counsel's deficient conduct, he would have brought an appeal.  This is similar to the Tenth
Circuit's requirement that the defendant must establish that he did not consent to the failure to appeal.
Both rules are consistent with <u>Strickland</u> and with the principle that it is ultimately the petitioner's
burden to establish his entitlement to relief.  In the present case, therefore, Crowell has the burden
of establishing that he wanted to appeal while there was still the chance, and would have done so but
for counsel's deficient performance.  The record here belies Crowell's claims.  The Court finds that
Crowell has failed to meet this burden, in that the most reasonable inference from the evidence is that
Crowell consented to the failure to appeal.

52.  Following sentencing, Crowell's behavior was not that of a man who wanted to appeal.
Crowell claims that "upon receipt of the letter" from Gaddy, sometime between mid-June and late
July 1987, he attempted to file a belated *pro se* appeal.  (EH, at 59; Doc.1 in CIV 97-420, at 2).
However, the record does not support that claim.  Indeed, it reflects that Crowell made no attempt

to contact the court until September 17, 1987, at the earliest. He claims that his request to file a late appeal was rejected by the clerk. The Court can only conclude that he is talking about his three attempts in the fall of 1987 to contact the district court: his Motion for Appointment of Counsel filed September 17, his Motion for Re-Appointment of Counsel filed October 8, and his letter to Judge Conway dated November 2. On each of these occasions, the clerk of court wrote back to Crowell, informing him that more information was needed and twice sending him the forms and instructions for filing a § 2255 motion.

 53. In his motion in CIV 97-420, Crowell alleged:

> Upon receipt of the letter, I asked a fellow inmate, who claimed to be well informed of the law, to assist me in filing what he called a "belated appeal." Apparently he was not familiar with the proper procedures involved with this because he attempted to file for the transcripts before the appeal was granted. The Court Clerks [sic] written response to this motion informed him of this error . . ..

This sequence of events seems to refer to the November 2, 1987 letter to Judge Conway, in which Crowell wrote that he was being "unlawfully restrained from my personal liberty" and asked Judge Conway to send him various documents, including transcripts. In response to this letter, the clerk wrote back on November 17, stating that it appeared that Crowell was interested in filing a habeas corpus action under § 2255. The clerk enclosed forms and instructions and wrote, "As to the documents you requested in your letter to Judge Conway, you can make your formal request for such documents after the 2255 action is initiated."[6]

---

[6] Apparently, Crowell changed his mind and gave up his attempt to challenge his conviction and sentence, since he did not file a § 2255 motion at that time. Instead, 9½ years later, on the eve of expiration of the new AEDPA-imposed limitation period, he changed his mind again and filed for § 2255 relief.

54.  Thus, the November 2 letter to Judge Conway appears to be the attempt to file a belated appeal described by Crowell and which he claims was initiated "upon receipt of" the Gaddy letter. It matters little whether Crowell's memory has dimmed after almost thirteen years, or whether he recalls "wish-born" facts.  In either case, the record shows that he waited weeks if not months before attempting a belated appeal; this does not support his assertion that he was eager to appeal and was thwarted in doing so only by the inadequate performance of his attorney.  Crowell's claims are simply unsupported.

55.  Even if Crowell had wanted to file an appeal immediately after sentencing but did not do so because he didn't receive the letter from Gaddy until several weeks after the deadline had passed, he could nevertheless have moved for an extension of time to appeal under F. R. App.  P. 4(b)(4). He may not have been aware of this particular rule, but it is not credible that a convicted man who wanted to appeal would have waited weeks or months after sentencing to contact his attorney or the court in some sort of attempt to extend the deadline or file a late appeal.  At least as of the date he received the letter, he was aware that he faced short deadlines for appealing.  If he did try to contact either Gaddy or the court prior to September 1987, he has produced no evidence, beyond his own assertions, to confirm that he made such attempts.

56.  Under the circumstances, having sent a letter to his client outlining the right to appeal, commenting on available appellate issues and the possible outcome, and not having heard back from his client, Gaddy could reasonably have assumed that Crowell decided to forego any appeal, in favor of serving the federal sentence that he bargained for when he decided to plead guilty.  Crowell's approach to accepting responsibility in this case had already undergone a series of flip-flops: first he pled not guilty; then on the eve of trial he reversed himself and decided to plead guilty straight up to

the indictment, in spite of the fact that the government offered no plea deal; then on the eve of sentencing he changed his mind again and decided he wanted to withdraw his plea. Once the court rejected this attempt, it would not have been unreasonable for his attorney to assume that Crowell changed course again and decided to content himself with the federal sentence which, after all, was the reason he pled guilty in the first place.

57. It is a reasonable inference from the evidence that Crowell had no objection to the lack of appeal. The fact that he apparently changed his mind in September 1987, perhaps upon learning that he would, after all, face prosecution on state charges, does not mean that his attorney was ineffective during the time period when an appeal might have been filed.[7] The Court does not consider credible Crowell's testimony that he wanted to appeal during the period when actions by Gaddy might have made a difference and therefore finds that Crowell has failed to establish that, but for counsel's deficient performance, he would have filed an appeal. Relief will not be granted on the ground that Crowell was denied his right to appeal.

### Issues Surrounding the Guilty Plea

Voluntariness of Plea and Ineffectiveness of Counsel in Connection with Plea

58. Crowell alleges that his guilty plea was not knowingly and voluntarily entered, because his attorney did not give him all the information he needed to make an informed decision and did not adequately advise him of the consequences of his plea. He claims that Gaddy withheld exculpatory information from him until after he had already pled guilty; that Gaddy inaccurately informed him that any sentence he received in state court would run concurrently to his federal sentence, when in fact the Arizona sentence was required by law to run consecutively to a federal sentence; and that Gaddy

---

[7] Crowell has provided no evidence as to the timing and outcome of the prosecution in Arizona state court.

told him Arizona would probably not pursue charges against him if he received a substantial sentence in federal court, when in fact state charges had allegedly already been filed months before Crowell pled guilty.

59.  A guilty plea must be shown to be intelligent and voluntary before the court will accept it.  Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969).  A guilty plea can be rendered involuntary when, in connection with the plea, defendant received constitutionally ineffective assistance of counsel, Romero v. Tansy, *supra*, at 1033, including erroneous legal advice as to the consequences of the plea.  Cunningham v. Diesslin, 92 F.3d 1054 (10th Cir. 1996).

60.  The two-prong test for ineffective assistance of counsel under Strickland v. Washington applies to challenges to guilty pleas based upon ineffectiveness of counsel.  Wallace v. Ward, 191 F.3d 1235, 1247 (10th Cir. 1999).  To prevail on a claim of ineffective assistance of counsel in the plea process, Crowell must show that his attorney's performance fell outside "the range of competence demanded of attorneys in criminal cases," Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985), and that he was prejudiced by his attorney's inadequate performance in that there is a reasonable probability that, if he had been properly advised, he would not have pled guilty and instead would have insisted on going to trial.  Id., at 58-59 (1985).

61.  Crowell claims that after he pled guilty and before he was sentenced, he became aware of three documents which his attorney had not previously given him.  If he had been given these documents earlier, he says, he would have made a more optimistic assessment of his chances of acquittal and would have insisted on going to trial.  The documents include two statements which the victim's aunt and uncle made to the FBI in which they allegedly confirm Crowell's contention that he helped the victim into his car rather than forced her in at knife point; the medical report on the

victim which allegedly contradicted her claims that she had been tied up, beaten, and cut with a knife, and which also showed that she had sexual contact "with somebody that definitely the report proved was not me"; and an evidence analysis report from the New Mexico Crime Laboratory which allegedly showed that a rope from Crowell's car had no skin, hair or blood traces, thus belying the victim's claim that she had been tied up (EH, at 50-54).[8]

62. Crowell has not supplied copies of these documents. They are not part of the record. Crowell describes them only in vague terms, and the Court has only his statement that they even exist. His attorney's internal file has been destroyed. In addition, Crowell has offered only his own testimony to establish that his attorney did not in fact give these documents to him before he entered his plea. This testimony was inconsistent with Gaddy's routine practice of providing clients with all documents relevant to a case.

63. Gaddy does not remember failing to give Crowell any documents. He testified at the evidentiary hearing that his client "believed" or "thought" that there were documents he had not previously seen which affected his ability to evaluate the plea, and "that's certainly what he told me." (EH, at 9-10) As far as Gaddy himself remembers, "I gave him documents as they became available to me throughout the course of my representation so that he was kept informed in the progress of our defense." (EH, at 10). Gaddy further testified that he cannot remember when, in the course of his

---

[8] Crowell asserts that the statements of the aunt and uncle are not the same materials that were involved in his <u>Brady</u> claim, which was rejected by the Tenth Circuit. *See*, <u>Crowell</u>, *supra*, at *4. If not the same, they are certainly similar. His <u>Brady</u> claim was based on an allegation that the government failed to disclose a runaway report containing statements by the aunt and uncle to the effect that they saw the victim attempting to hide from them as she got into Crowell's car, rather than frantically signaling for help, as the victim asserted. The Tenth Circuit held that the statements were not exculpatory and not material, since "impeaching the probable testimony of the aunt and uncle on this point hardly would have been controlling in a decision to plead guilty."

representation of Crowell, he became aware of the statements by the aunt and uncle, nor whether the information was in the form of a document or a report of an investigator. (EH, at 27). Gaddy does not clearly state anywhere in his testimony that he failed to give Crowell any documents; he merely says that Crowell believed, and told Gaddy, that he hadn't received these items prior to the plea.

64.     Gaddy did testify that he made a motion for withdrawal of the plea based on Crowell's claims of ineffective assistance of counsel, and his stated reason for asserting this ground was "[b]ecause if I had not given him everything he needed to make an informed, knowledgeable decision with respect to whether or not to enter the plea, then I had not done my job properly, at least I felt I had not." (EH, at 11). He also stated, "I thought that a new counsel should be appointed, review the entire situation and determine whether or not I had been [ineffective] and whether Mr. Crowell had been given all the documents he felt necessary . . . ." (EH, at 13). He did not concede that he was ineffective or that he failed to give his client all relevant material; rather, he asked that new counsel be appointed in order to preserve Crowell's right to raise these issues.

65.     Gaddy and Crowell are the only two people who can testify as to when Gaddy first gave these documents to Crowell. Gaddy does not remember, the claim is inconsistent with Gaddy's routine practice, and any correspondence or other documentary evidence in his internal case file, which might have helped to settle this issue, is no longer availabale. Crowell testified without equivocation that Gaddy did not give him these documents prior to the plea. He has not wavered or been inconsistent in making this allegation since he first raised it 13 years ago. On the other hand, it is in his interest to make the allegation and, aside from his own testimony, he has not presented any evidence to show when the documents were revealed or exactly what was in them.

66. Two other documents which Crowell claims were not disclosed to him prior to his plea include the victim's medical records and a laboratory report, which allegedly contain exculpatory information. These documents are not part of the record, and the Court therefore cannot assess their authenticity and materiality. However, even if they are as Crowell describes them, he has failed to meet his burden of establishing that if he had seen them earlier, he would not have pled guilty.

67. The Tenth Circuit held that the <u>Brady</u> material which Crowell claimed was withheld by the prosecution was not material, in that it "would hardly have been controlling in a decision to plead guilty." <u>Crowell</u>, *supra*, at *4. The same can be said of the documents which Crowell claims were withheld by his attorney. His argument regarding statements by the aunt and uncle is based on the same reasoning as his argument on the <u>Brady</u> materials, which has already been rejected by the Tenth Circuit. This Court rejects that argument for the reasons given by the Tenth Circuit, that is, impeaching the testimony of these two witnesses would not have been a controlling factor in deciding whether or not to go to trial.

68. Crowell gives only a sketchy description of the laboratory report which he alleges would have led him to insist on going to trial. He says only that laboratory results showed that a rope found in his car did not contain any evidence of blood, skin, or hair. The absence of blood, skin or hair does not eliminate this piece of rope as the one used, nor, even if the report is as Crowell describes it, does it eliminate the possibility that the victim was tied up with a different piece of rope or other material. The report "would hardly have been controlling in a decision to plead guilty."

69. If the hospital report was as Crowell described it – that is, if it showed the victim had no cuts or other marks on her body to corroborate her statement that she was abducted and knife point and tied up — it would tend to be more exculpatory than the other documents he claims were

withheld, although certainly not conclusive.[9] However, Crowell has not produced these records, nor has he supplied any evidence other than his own testimony that they are as he describes them, and that his attorney knew of them and failed to disclose them in a timely manner. This slim, unsupported record does not support a finding that the course of the proceedings would have been different if Crowell had seen these hospital records before he pled guilty.

70. Crowell also alleges that his attorney was constitutionally ineffective in advising him that any sentence he might receive in Arizona state court would run concurrent with his federal sentence, when in fact Arizona law at the time required that the two sentences be run consecutively. He argues that, since he pled guilty in federal court to avoid having to do time in a state facility, this advice regarding concurrence played a deciding role in his decision to plead guilty in this case. Crowell has not cited any 1987 Arizona law with regard to this question, and the Court makes no finding as to whether Arizona law did in fact require consecutive sentences at that time. The Court finds it unnecessary to do so, because there is nothing on the record, aside from Crowell's own testimony, which the Court does not find credible, to show that his attorney gave him any such advice. To the contrary, Crowell's own affidavit refutes this contention.

71. Gaddy did not mention the concurrence matter in his testimony at the evidentiary hearing. The affidavit signed by Crowell in connection with his guilty plea contains no mention of concurrent state/federal sentences in its lengthy account of the reasons why Crowell was pleading straight up to the indictment. There is mention in the affidavit of his desire to do federal, rather than state, time, and if he had been relying on a concurrent sentence, one would have expected this factor to be cited

---

[9] The Court notes that there is nothing on the record to corroborate Crowell's testimony that laboratory reports or hospital records show that the victim had sexual contact with someone other than Crowell.

in the affidavit. In the Memorandum of Law submitted with his Motion to Vacate, Crowell stated that Gaddy "promised" him that the sentences would run concurrently and that this statement "is reflected in a letter written by counsel to the Petitioner." [Doc. 2, at 7]. Crowell has not supplied a copy of this alleged letter, and the Court has no grounds for finding that it exists, or that Gaddy ever so advised Crowell. Several letters from Gaddy to Crowell are part of the record herein, and none of them contains such a statement. The Court rejects this as a ground for finding ineffective assistance of counsel.

72. Crowell claims, finally, that Gaddy misled him into pleading guilty by informing him that if he received a substantial federal sentence, the state of Arizona would probably not bring charges against him. Gaddy did not represent Crowell in the Arizona proceedings, but he did have contact with the Arizona prosecutor during the course of the federal proceedings. Gaddy testified that the Arizona prosecutor told him that the decision whether to go forward on the state charges "may or may not" be affected by a substantial sentence in the federal case. (EH, at 19). Gaddy said that no promises were offered and Crowell had no assurance one way or the other from the state prosecutor. He recognized that the guilty plea was something of a gamble, and although he does not remember what his advice was on the matter, he remembers that he discussed the issue with Crowell. (EH, at 19-20).

73. In the affidavit signed by Crowell in connection with his guilty plea in federal court, he stated that his reason for pleading guilty was his acknowledgment that he would be doing time in some penal system, and he preferred to serve his time in federal rather than state prison. He also stated that he was aware that his attorney had spoken to the Arizona prosecutor, and that:

> [i]t is my understanding that Arizona may not pursue charges against
> me if I receive a significant sentence in the federal case. I
> acknowledge that there is no formal agreement to this effect.
> However, an additional consideration in my decision to plea [sic] is
> the possibility that Arizona will not prosecute in the event of a
> significant federal sentence. On the other hand, if I prevail in the
> federal case, I am certain that Arizona will prosecute and that I would
> be convicted and sentenced to a substantial term of imprisonment in
> the Arizona system. Accordingly, I have decided to plead to the
> federal charges so as to do my time in the federal system and on the
> chance that Arizona will not prosecute.

74. The Court rejects Crowell's allegation of a "promise" by his attorney that Arizona would not prosecute if he received a substantial federal sentence. It is clear from the record that, in pleading guilty, Crowell bargained for a chance, not a guarantee. The fact that Arizona chose to proceed with its prosecution does not mean that Crowell was deprived of the benefit of his bargain. "When a defendant enters a guilty plea upon advice of counsel, the voluntariness of the plea depends on whether the advice given was within the range of competence demanded of attorneys in criminal cases." Gonzales v. Tansy, 65 F.3d 178 (Table, text in Westlaw), 1995 WL 509954 (10th Cir. Aug. 29, 1995) (internal quotation marks omitted). If Gaddy had advised Crowell to plead guilty[10] on the chance that Arizona would not prosecute, that would have been "within the range of competence" of criminal defense attorneys. The Arizona prosecutor told him a substantial federal sentence *might* result in dropping the Arizona charges, and in light of Crowell's preference for federal over state incarceration it would have been reasonable for Gaddy to advise Crowell to take that chance, since a lengthy federal sentence might well have convinced the state prosecutor that his office's resources could better be used elsewhere. Pleading guilty "entails the inherent risk that the good-faith

---

[10]There is some evidence that Crowell's decision to plead guilty was against his attorney's advice; *see*, EH, at 47; Affidavit at ¶¶ 6, 7.

evaluations of a reasonably competent attorney will turn out to be mistaken." <u>United States v. Broce</u>, 488 U.S. 563, 572, 109 S. Ct. 757, 764 (1989), *quoted in* <u>Bustamonte v. LeMaster</u>, No. 99-2220, 2000 WL 107372, at *2 (10th Cir. Jan. 21, 2000).

75. The Court finds that Crowell has not met his burden of showing that his guilty plea was involuntary due to ineffective assistance of counsel. The record does not establish that Gaddy failed to give him any documents, and Crowell has not convinced the court that, even if these documents were provided after he had already pled guilty, they would have been material in causing him to change his mind. He has not shown that Gaddy promised him concurrent sentences, that Arizona law at the time required consecutive sentences, nor that he even received a consecutive sentence. He has not shown that Gaddy's advice to plead guilty to the federal charge, even if he did give such advice, was not reasonable in light of the circumstances. The Court finds that the plea was voluntary when made, and that the most reasonable inference from the facts is that Crowell changed his mind at the last minute, a move which would not have been atypical for him. Whatever reasons he had for doing so, they were not based on constitutionally inadequate advice and representation by his attorney.

### <u>Trial Court's Denial of Motion to Withdraw Guilty Plea</u>

76. Crowell's final claim is that the trial court erred in denying his motion to withdraw the guilty plea, made on the eve of sentencing. Crowell claims that he entered an <u>Alford</u> plea. The government disputes this, the record is unclear on this point, and due to Crowell's delay in bringing this action there is no transcript of the plea hearing available which might have helped resolve this issue. However, the Court does not find it necessary to resolve this factual dispute. "By definition, defendants who make Alford pleas do not deny their legal innocence. This does not mean they can

withdraw these pleas willy-nilly." <u>United States v. Buckley</u>, 847 F.2d 991, 998 n.4 (1st Cir. 1988), *quoted in* <u>United States v. Hickok</u>, 907 F.2d 983, 985 n.2 (10th Cir. 1990). The defendant still bears the burden of showing a "fair and just reason" for the withdrawal, F. R. Crim. P. Rule 32(e); <u>United States v. Hyde</u>, 520 U.S. 670, 676, 117 S. Ct. 1630, 1634 (1997). "Change of heart does not pass muster." <u>Hickok</u>, at 986.

77. The decision whether to allow withdrawal of a guilty plea before sentencing is left to the sound discretion of the trial court. <u>United States v. Vidakovich</u>, 911 F.2d 435, 439 (10th Cir. 1990), and unless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion. <u>Hickok</u>, at 986. The court is to consider such factors as whether defendant has asserted his innocence, whether the government would suffer prejudice if withdrawal is granted, whether defendant has delayed in filing the motion for withdrawal, whether the court would be inconvenienced, whether close assistance of counsel was available, whether the original plea was knowing and voluntary, and whether the withdrawal would waste judicial resources. <u>United States v. Elias</u>, 937 F.2d 1514, 1520 (10th Cir. 1991); <u>Hickok</u>, at 985 n.2.

78. Gorence testified that the 14-year-old victim had considerable anxiety about testifying at Crowell's trial, and after Crowell moved to withdraw his plea, Gorence had to call the victim's family and tell them that the trial may be "on" again, after informing them earlier, to their great relief, that Crowell had pled guilty. Gorence argued that the motion to withdraw the plea was really a manipulative attempt by Crowell to "play the system and see if something could fall between the cracks," and it had a "pernicious effect on this young woman." (EH, at 87-89).

79. There is no transcript of the original plea hearing on April 10, 1987, but the clerk's notes of that hearing indicate that the court questioned Crowell as to his physical and mental condition and

advised him of the charge and possible consequences of the plea. Judge Conway also explained the nature of the offense with which he was charged, the maximum penalty upon conviction, and the rights which defendant would waive if he pled guilty. [Minutes filed between Docs. 31 and 32, CR 87-15].

80. Judge Conway thus assured himself that the guilty plea was voluntarily made before he accepted it, and the Court can only conclude that Crowell presented nothing at the sentencing hearing that caused the judge to change his mind. The government presented evidence of prejudice. Crowell was represented by counsel throughout the plea and sentencing proceedings, and there is no evidence that he was deprived of counsel's "close assistance." There is no question that withdrawal would waste judicial resources, since one jury had already been chosen and dismissed, and the court and parties would have to start all over. The Court finds no abuse of discretion in the trial court's denial of Crowell's motion to withdraw his guilty plea.

## Conclusion

81. Crowell's lengthy delay in filing his § 2255 motion has prejudiced the government in its ability to respond. Even if the Court were to set aside that prejudice, Crowell has not shown that his plea was involuntary and the trial judge erred in denying his motion to withdraw it, or that he was denied his right to appeal, or that his attorney was ineffective in failing to give him certain documents in a timely manner, or in advising him that state charges either would not be brought at all, or would result in concurrent sentences, if he pled guilty.

**<u>RECOMMENDED DISPOSITION</u>**

That Crowell's motion be denied and the case be dismissed with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge